# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JENNIFER CARRELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-13-238-RAW-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Jennifer Carrell requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born April 14, 1977, and was thirty-five years old at the time of the administrative hearing (Tr. 28, 42). She completed high school, and has past relevant work as a telephone representative and deli worker (Tr. 27). The claimant alleges that she has been unable to work since March 19, 2010 because of sick sinus syndrome and back problems (Tr. 38-40, 277).

**Procedural History**

On March 19, 2010, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85.[2] Her application was denied on initial consideration and upon reconsideration (Tr. 116-123, 127-132). ALJ Michael Kirkpatrick held an administrative hearing and determined the claimant was not disabled in a written opinion dated August 29, 2011 (Tr. 97-106). The Appeals Council granted Claimant's request for review and remanded the case to the ALJ (Tr. 111-113). On remand, ALJ Doug Gabbard, II held an administrative hearing and determined the claimant was not disabled in a written opinion dated October 26, 2012 (Tr. 19-28). The Appeals Council denied review of that opinion, thus, ALJ Gabbard's

---

[2] Claimant initially applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 as well as supplemental security benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 on April 7, 2010, however, at the hearing held on July 24, 2012 before ALJ Doug Gabbard, II, she amended her alleged disability onset date to March 19, 2010, which is beyond her last date of insurance. Claimant does not contest the Commissioner's decision that she waived her Title II eligibility by such amended onset date.

written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), 416.967(b), but could perform only unskilled work (work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time) where supervision is simple, direct and concrete; interpersonal contact is incidental to the work performed; and where there is no contact with the general public. Additionally, the ALJ found that the claimant must avoid hazards such as moving machinery and unprotected heights and must have the ability to alternately sit and stand throughout the workday (Tr. 23). The ALJ concluded that while the claimant is unable to perform her past relevant work, she was nevertheless not disabled because there was other work in the national economy that she could perform, *i.e*, bench assembler and electrical equipment assembler (Tr. 27-28).

## Review

The claimant contends that the ALJ erred: (i) by failing to accept that sit/stand options are available only for executive positions, (ii) by failing to properly question the vocational expert ("VE") as to the claimant's need for a sit/stand option, and (iii) by failing to identify how much time was needed in the sit/stand option. Because the ALJ *did fail* to properly identify the amount of time needed to sit and to stand, the decision of the Commissioner should be reversed and the case remanded for further proceedings.

4

The ALJ found that the claimant had the severe physical impairments of degenerative disc disease and premature ventricular contractions and the severe mental impairments of depressive disorder and mood disorder (Tr. 22).

On May 8, 2009 the claimant reported to her physician's assistant that she wished to try physical therapy for low back pain she that had been experiencing since being involved in a car wreck 2-3 years prior (Tr. 391). She was prescribed Medrol and Flexeril and was given a referral for physical therapy. On July 15, 2009, an MRI of the claimant's spine lumbar was conducted and revealed degenerative disc disease and mild broad based disc bulge at L4-5. There were very mild degenerative changes in the L4-5 and L5-S1 facet joints (Tr. 443).

On August 29, 2008, claimant presented to Dr. Troy Norred with a history of syncope, presyncope and palpitations (Tr. 380). Dr. Norred noted impression of palpitations, syncope and motor vehicle accident/possible myocardial contusion (Tr. 381). He recommended claimant continue her current medications and recommended aggressive secondary risk factor modifications (Tr. 382). On December 16, 2008 Dr. Norred prescribed claimant very low dose Lasix (10mg daily) and potassium and instructed claimant to ensure that she checks her blood pressure and to discontinue Lasix if she experienced weakness or lightheadedness (Tr. 378-379). On January 26, 2009 claimant presented to the Valley View Regional Hospital Emergency Department complaining of dizziness, chest pain, shortness of breath, heart palpitations, blurred vision, headache and numbness/tingling and was diagnosed with a history of atrial fibrillation and bradycardia (Tr. 403-404). Claimant followed up with her physician's

assistant on January 28, 2009 who recommended claimant quit smoking and ordered a Holter monitor (Tr. 394). The Holter monitor revealed sinus rhythm 86 bpm, frequent PVCs with occasional bigeminal (Tr. 516). On July 5, 2009 claimant presented to the Valley View Regional Hospital Emergency Department complaining of chest pain and was diagnosed with sick sinus syndrome (Tr. 423). A cardiac echocardiogram revealed left ventricular function ejection fraction 65%, with valvular disease mitral insufficiency with + 1, with mild tricuspid regurgitation (Tr. 432). A myocardial perfusion study performed on July 10, 2009 was normal with ejection fraction 65% (Tr. 520). Based on claimant's reported repeat episodes of near syncope and PVCs and apparent bradycardia, Dr. George K. Joseph recommended an implanted loop recorder which was implanted on November 3, 2009 and was removed on October 10, 2010 (Tr. 497, 686). Claimant's diagnosis was premature ventricular contractions (Tr. 686).

The claimant has been treated by Dr. Bayne for depression and anxiety since January 28, 2010. Dr. Bayne prescribed claimant Xanax for panic attacks, varying antidepressants for depression, Invega for irritability and aggressiveness and Zolpidem to help claimant sleep. With few exceptions, Dr. Bayne's appointment notes indicate that the claimant is doing fairly well overall and that the claimant reports the medications help control her anxiety and keep her mood fairly stable (Tr. 582-588, 700-704, 724-730).

Residual functional capacity is defined by the Social Security Regulations as what a claimant is capable of doing despite her mental and physical limitations. *Davidson v. Secretary of Health & Human Services*, 912 f.2d 1246, 1253 (10th Cir. 1990). RFC categories have been established based on the physical demands of various kinds of work

in the national economy. 20 C.F.R. § 404.1567. RFC is a medical assessment based primarily on medical findings such as symptoms, signs, and laboratory results. Additionally, medical and non-medical sources also must be considered in determining the RFC. 20 C.F.R. § 404.1545(a). When the ALJ is assessing the RFC, he "must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i. e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Soc. Sec. Rul. 96-8p, 1996 WL 374184, *7 (July 2, 1996).

In this case, the ALJ found that any work the claimant could perform given her physical limitations would require the claimant to "alternately sit and stand throughout the workday," (Tr. 23), but he did not specify the parameters of the sit/stand option. The claimant argues that this was error under Soc. Sec. R. 96-9p, 1996 WL 374185, at *5 (July 2, 1996) ("An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing."). Although it is true that Soc. Sec. R. 96-9p applies in the case of *sedentary work*, not *light work*, *see Vititoe v. Colvin*, 549 Fed. Appx. 723, 731 (10th Cir. 2013) ("But SSR 96-9p applies in cases where the claimant is limited to less than the full range of *sedentary work* and the disability determination is not directed by the Grids. Here the ALJ found that Mr. Vititoe retains the capacity to perform less than the full range of *light work*, so SSR 96-9p is not applicable."), those guidelines are still applicable in this case because "[p]recisely

7

how long a claimant can sit without a change in position is also relevant to assumptions whether [s]he can perform light work." *Vail v. Barnhart*, 84 Fed. Appx. 1, 4 (10th Cir. 2003), *citing* 20 C.F.R. § 404.1567(b). This is consistent with Soc. Sec. Rul. 83-12, which states:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.) [ M]ost jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a [VE] should be consulted to clarify the implications for the occupational base.

(Program Policy Statement -103) 1983 WL 31253, at *4.

Here, the ALJ simply stated that the claimant would need to be allowed "to alternately sit and stand throughout the day". The Commissioner argues without support that this clearly means that the ability to sit and stand is "at will," but the undersigned Magistrate Judge disagrees. *Verstraete v. Astrue*, 2013 WL 238193, at *5 (D. Kan. Jan. 22, 2013) ("[T]he ALJ's RFC findings failed to specifically indicate the frequency of plaintiff's need to alternate sitting and standing. The court will not imply such a finding by the ALJ, especially given that any specific finding by the ALJ would have to be supported by evidence in the record."). *See also Newton v. Colvin*, 2013 WL 6169298, at *3 n.3 (W.D. Okla. Nov. 21, 2013) ("Because the question of how often a claimant can

sit without changing positions is equally important when light work is involved, *see* 20 C.F.R. § 404.1567(b), courts have frequently relied on SSR 96-9p when assessing opinions that a claimant cannot perform a full range of light work."), *citing Vail*, 84 F. Appx. at 4-5 *and Verstraete*, 2013 WL 238193, at *3-5. Furthermore, even if the Court could find that the sit/stand option included in the claimant's RFC was intended by the ALJ to be at will, it is unclear whether the VE understood this to be what the ALJ intended, and thus likewise unclear whether the claimant can perform the jobs found by the ALJ given the need to sit or stand at will throughout the workday.

Accordingly, the decision of the Commissioner should be reversed and the case remanded for further analysis of the claimant's RFC, in particular her limitations related to the frequency needed for a sit/stand option. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 11th day of September, 2014.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**